JACKSON, Justice.
**133 In this case we consider whether defendant North Carolina Department of Revenue could tax the income of plaintiff The Kimberly **134 Rice Kaestner 1992 Family Trust pursuant to N.C.G.S. § 105-160.2 solely based on the North Carolina residence of the beneficiaries during tax years 2005 through 2008. Because we determine that plaintiff did not have sufficient minimum contacts with the State of North Carolina to satisfy due process requirements of the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Constitution of North Carolina, we conclude that the taxes at issue were collected unconstitutionally and, therefore, affirm the decision of the Court of Appeals affirming the North Carolina Business Court's 23 April 2015 Opinion and Order *45 on Motions for Summary Judgment in favor of plaintiff.
As the Business Court noted, the underlying, material facts of this case as established by the evidence in the record are not in dispute. The Joseph Lee Rice, III Family 1992 Trust was created in New York in 1992 for the benefit of the children of the settlor Joseph Lee Rice, III pursuant to a trust agreement between Rice and the initial trustee, William B. Matteson. In 2005 Matteson was replaced as trustee by David Bernstein, who was a resident of Connecticut. Bernstein remained in the position of trustee and remained a Connecticut resident during the entire period of time relevant to this case. The trust was and is governed by the laws of the State of New York, of which Rice was a resident. No party to the trust resided in North Carolina until Rice's daughter and a primary beneficiary of the trust, Kimberly Rice Kaestner, moved to North Carolina in 1997.
On 30 December 2002, the trust was divided into three share sub-trusts one each for the benefit of Rice's three children, including Kaestner. The sub-trusts were divided into three separate trusts in 2006 by Bernstein for administrative convenience. Plaintiff is the separate share trust formed for the benefit of Kaestner and her three children, all of whom resided in North Carolina during the tax years at issue.
During the tax years at issue, the assets held by plaintiff consisted of various financial investments, and the custodians of those assets were located in Boston, Massachusetts. Documents related to plaintiff such as ownership documents, financial books and records, and legal records were all kept in New York. All of plaintiff's tax returns and accountings were prepared in New York.
None of the beneficiaries of plaintiff had an absolute right to any of plaintiff's assets or income because distributions could only be made at the discretion of Bernstein, who had broad authority to manage the property held by plaintiff. No distributions were made to beneficiaries in **135 North Carolina, including Kaestner, during the tax years at issue; however, in January 2009, plaintiff loaned $250,000 to Kaestner at Bernstein's discretion to enable her to pursue an investment opportunity. This loan was repaid.
The terms of the original trust provided that the trustee was to distribute the trust assets to Kaestner when she reached the age of forty. Before her fortieth birthday on 2 June 2009, Kaestner had conversations with her father and Bernstein about whether she wished to receive the trust assets on that date. Ultimately, she requested to extend the trust, and accordingly, Bernstein transferred the assets of plaintiff into a new trust, the KER Family Trust, in 2009. That transfer occurred after the tax years at issue, and KER Family Trust is not a party to this case.
In managing plaintiff, Bernstein provided Kaestner with accountings of trust assets, and she received legal advice regarding plaintiff from Bernstein and his firm. Kaestner and her husband also met with Bernstein in New York to discuss investment opportunities for the trust and whether Kaestner desired to receive income distribution as set forth in the original trust agreement.
During tax years 2005 through 2008, defendant taxed plaintiff on income accumulated each year, regardless of whether any of that income was distributed to any of the North Carolina beneficiaries. Plaintiff sought a refund of those taxes totaling more than $1.3 million, including $79,634.00 paid for 2005, $106,637.00 paid for 2006, $1,099,660.00 paid for 2007, and $17,241.00 paid for 2008. Defendant denied the refund request on 11 February 2011.
On 21 June 2012, plaintiff filed a complaint in Superior Court, Wake County, alleging that defendant wrongfully denied plaintiff's request for a refund because N.C.G.S. § 105-160.2 is both unconstitutional on its face and as applied to collect income taxes from plaintiff during those tax years. Plaintiff claimed that the taxes collected pursuant to section 105-160.2 violate the Due Process Clause because plaintiff did not have sufficient minimum contacts with the State of North Carolina. Plaintiff also claimed that the taxes violate the Commerce Clause on several grounds, including that the tax was not applied to an activity with a substantial nexus *46 to the taxing state. Plaintiff claimed that consequently, the tax also violated Article I, Section 19 of the state constitution. Based on these claims, plaintiff requested a declaration that section 105-160.2 is unconstitutional and an order from the court requiring defendant to refund any taxes, penalties, and interest paid by plaintiff for tax years 2005 through 2008, and enjoining defendant from enforcing any future **136 assessments against plaintiff pursuant to section 105-160.2. Subsequent evidence indicated that penalties were assessed against plaintiff for tax years 2005 and 2006. These penalties were not paid by plaintiff and were ultimately waived at plaintiff's request, rendering moot that specific portion of plaintiff's claim for relief.
In accord with N.C.G.S. § 7A-45.4(b), this case was designated as a mandatory complex business case by the Chief Justice on 19 July 2012. On 11 February 2013, the Business Court issued an Opinion and Order on Defendant's Motion to Dismiss in which it granted the motion as to plaintiff's claim for injunctive relief, but denied the motion as to plaintiff's constitutional claims.
Relevant to this appeal, plaintiff filed a motion for summary judgment on its constitutional claims on 8 July 2014, and defendant filed its own motion for summary judgment on 4 September 2014. In its Opinion and Order on Motions for Summary Judgment, the Business Court observed that when a taxed entity such as plaintiff is not physically present in the taxing state, the taxed entity must "purposefully avail[ ] itself of the benefits of an economic market in the forum state" for the tax to satisfy due process requirements. Kimberley Rice Kaestner 1992 Family Trust v. N.C. Dep't of Revenue , No. 12 CVS 8740, 2015 WL 1880607, at *4 (N.C. Super. Ct. Wake County (Bus. Ct.) Apr. 23, 2015), aff'd , --- N.C. App. ----, 789 S.E.2d 645 (2016) (quoting Quill Corp. v. North Dakota , 504 U.S. 298, 307, 112 S.Ct. 1904, 1910, 119 L.Ed.2d 91 (1992) ). Determining that plaintiff did not purposefully avail itself of the benefits of the taxing state based solely on the beneficiaries' residence in North Carolina, the Business Court concluded that the provision of section 105-160.2 allowing taxation of trust income "that is for the benefit of a resident of this State," N.C.G.S. § 105-160.2 (2005), violated both the Due Process Clause and Article I, Section 19 of the state constitution as applied to plaintiff. Applying the four-pronged analysis for determining the constitutionality of a tax pursuant to the Commerce Clause as set forth by the United States Supreme Court in Complete Auto Transit, Inc. v. Brady , 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), the Business Court also determined that the same provision of section 105-160.2 violated the Commerce Clause as applied to plaintiff. Therefore, the Business Court denied defendant's motion for summary judgment, granted plaintiff's motion for summary judgment, and ordered that any taxes and penalties paid by plaintiff pursuant to section 105-160.2 be refunded with interest.
Defendant noticed its appeal to the Court of Appeals on 22 May 2015. Before that court, defendant challenged the substantive conclusions of the Business Court that taxation of the trust based solely on **137 the residency of the beneficiaries violated both the Due Process and Commerce Clauses as applied to plaintiff. Kaestner 1992 Family Tr. v. N.C. Dep't of Revenue , --- N.C. App. ----, ----, 789 S.E.2d 645, 647-48 (2016). Like the Business Court, the Court of Appeals also reasoned from the United States Supreme Court's guidance that "[t]he Due Process Clause requires [ (1) ] some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax, and [ (2) ] that the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." Id. at ----, 789 S.E.2d at 649 (second and third alterations in original) (quoting Quill , 504 U.S. at 306, 112 S.Ct. at 1909-10 (citations and internal quotation marks omitted) ). Noting that a trust has a separate legal existence for the purpose of income taxes pursuant to Anderson v. Wilson , 289 U.S. 20, 27, 53 S.Ct. 417, 420, 77 L.Ed. 1004 (1933), Kaestner 1992 Family Tr. , --- N.C. App. at ----, 789 S.E.2d at 650, the Court of Appeals held that the connection between North Carolina and the trust based solely on the residence of the beneficiaries was insufficient to satisfy due process requirements, id. at ----, 789 S.E.2d at 651. *47 Consequently, the Court of Appeals affirmed the Business Court's order granting summary judgment for plaintiff. Id. at ----, 789 S.E.2d at 651. The Court of Appeals chose not to address whether taxation of plaintiff also violated the Commerce Clause. Id. at ----, 789 S.E.2d at 651.
On appeal to this Court from the decision of the Court of Appeals, defendant continues to argue that plaintiff had minimum contacts with the State of North Carolina sufficient to satisfy due process based on the presence of the beneficiaries in the state. Defendant also argues that plaintiff had sufficient minimum contacts with North Carolina through certain acts of the trustee whereby plaintiff benefitted from "the ordered society maintained by taxation in North Carolina." We disagree.
"Our standard of review of an appeal from summary judgment is de novo." In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citing Forbis v. Neal , 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ). "Under the de novo standard of review, the [Court] 'consider[s] the matter anew[ ] and freely [substitutes] its own judgment for' [that of the lower court]." Midrex Techs., Inc. v. N.C. Dep't of Revenue , 369 N.C. 250, 257, 794 S.E.2d 785, 791 (2016) (first and fifth alterations in original) (quoting N.C. Dep't of Env't & Nat. Res. v. Carroll , 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (second and third alterations in original) ). On a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is **138 no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017).
The relevant provision of section 105-160.2 has remained substantively unchanged since the tax years at issue and states that income tax on an estate or trust "is computed on the amount of the taxable income of the estate or trust that is for the benefit of a resident of this State." Id. § 105-160.2 (2017). In its complaint and motion for summary judgment, plaintiff maintained that this section is both unconstitutional on its face and as applied to plaintiff. We presume "that any act passed by the legislature is constitutional, and [we] will not strike it down if [it] can be upheld on any reasonable ground." State v. Bryant , 359 N.C. 554, 564, 614 S.E.2d 479, 486 (2005) (quoting State v. Thompson , 349 N.C. 483, 491, 508 S.E.2d 277, 281-82 (1998) (second alteration in original) ). Consequently, "[a]n individual challenging the facial constitutionality of a legislative act 'must establish that no set of circumstances exists under which the [a]ct would be valid.' " Thompson , 349 N.C. at 491, 508 S.E.2d at 282 (second alteration in original) (quoting United States v. Salerno , 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987) ). Given this exacting standard and that the allegations and evidence appear relevant solely to whether defendant unconstitutionally collected income taxes from plaintiff for tax years 2005 through 2008, we consider only whether section 105-160.2 is unconstitutional as applied to plaintiff to collect the taxes at issue.
In considering an as-applied challenge to the constitutionality of a statute, we look to whether the statute is constitutional in the limited context of the facts of the case before us. Then, as with any constitutional challenge, "[i]f there is a conflict between a statute and the Constitution, this Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution, because the Constitution is the superior rule of law in that situation." Adams v. N.C. Dep't of Nat. & Econ. Res. , 295 N.C. 683, 690, 249 S.E.2d 402, 406 (1978) (quoting Nicholson v. State Educ. Assistance Auth. , 275 N.C. 439, 447, 168 S.E.2d 401, 406 (1969) ).
The Fourteenth Amendment directs that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. Similarly, our state constitution declares that "[n]o person shall be ... in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Indeed, we have determined that "[t]he term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous *48 with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." **139 Rhyne v. K-Mart Corp. , 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting In re Moore , 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976) ). Accordingly, our analysis of plaintiff's due process challenge below also applies to plaintiff's state constitutional claim.
When applied to taxation, "[t]he Due Process Clause 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " Quill , 504 U.S. at 306, 112 S.Ct. at 1909 (quoting Miller Bros. Co. v. Maryland , 347 U.S. 340, 344-45, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954) ). Due process also requires that "the 'income attributed to the State for tax purposes must be rationally related to values connected with the taxing State,' " id. at 306, 112 S.Ct. at 1909-10 (internal quotation marks omitted) (quoting Moorman Mfg. Co. v. Bair , 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978) ); however, in this case we are concerned only with the first requirement. This "minimum connection," which is more commonly referred to as "minimum contacts," see id. at 307, 112 S.Ct. at 1910 (citing Int'l Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ), exists when the taxed entity "purposefully avails itself of the benefits of an economic market" in the taxing state "even if it has no physical presence in the State," id. at 307, 112 S.Ct. at 1910 (citing Burger King Corp. v. Rudzewicz , 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) ). The Court in Quill Corporation therefore declared: "[T]o the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State" for imposition and collection of a tax, "we overrule those holdings as superseded by developments in the law of due process." Id. at 308, 112 S.Ct. at 1911. Applying that standard, the Court went on to hold that the plaintiff in Quill Corporation "purposefully directed its activities at North Dakota residents, that the magnitude of those contacts [was] more than sufficient for due process purposes, and that the use tax [was] related to the benefits Quill receive[d] from access to the State," id. at 308, 112 S.Ct. at 1911, when the plaintiff generated revenue of almost $1 million annually from selling office equipment and supplies to approximately 3,000 customers in North Dakota even though all merchandise was delivered from out of state by mail or common carriers, id. at 302, 112 S.Ct. at 1907-08.
We have similarly determined that a finding of minimum contacts sufficient to satisfy due process "will vary with the quality and nature of the [party's] activity, but it is essential in each case that there be some act by which the [party] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."
**140 Skinner v. Preferred Credit , 361 N.C. 114, 123, 638 S.E.2d 203, 210-11 (2006) (quoting Chadbourn, Inc. v. Katz , 285 N.C. 700, 705, 208 S.E.2d 676, 679 (1974) ). In light of Quill Corporation and our understanding of minimum contacts analysis, we therefore consider defendant's first argument in terms of whether plaintiff can be said to have minimum contacts with North Carolina based on the presence of its beneficiaries in our State.
The Supreme Court has observed that even though a "trust is an abstraction.... the law has seen fit to deal with this abstraction for income tax purposes as a separate existence, making its own return under the hand of the fiduciary and claiming and receiving its own appropriate deductions." Anderson , 289 U.S. at 27, 53 S.Ct. at 420. The Internal Revenue Code imposes a separate tax on the income of trusts, see 26 U.S.C. § 1(e) (2012), implicitly recognizing, at least for tax purposes, that a trust is a separate entity to which income is separately attributed. Any tax on that income is physically paid by the fiduciary or trustee, with the amount of the tax being "computed in the same manner as in the case of an individual." Id. § 641(a)-(b). In North Carolina "[t]he taxable income of an estate or trust is the same as taxable income for such an estate or trust under the provisions of the Code." N.C.G.S. § 105-160.2. Neither the Code nor Chapter 105 conflates the income of the trust with the income of a beneficiary.
*49 In Brooke v. City of Norfolk the Supreme Court considered whether the City of Norfolk and Commonwealth of Virginia had violated the Due Process Clause by taxing the body of a Maryland trust when none of the property held by the trust had ever been present in Virginia. 277 U.S. 27, 28, 48 S.Ct. 422, 422, 72 L.Ed. 767 (1928). Although the Supreme Court applied presence-focused due process analysis that has since been supplanted by the minimum contacts test, see Quill , 504 U.S. at 308, 112 S.Ct. at 1911, the Court also recognized that a trust and its beneficiary are legally independent entities when it observed that the property held by the trust "is not within the State, does not belong to the [beneficiary] and is not within her possession or control. The assessment is a bare proposition to make the [beneficiary] pay upon an interest to which she is a stranger," Brooke , 277 U.S. at 29, 48 S.Ct. at 422.
That plaintiff and its North Carolina beneficiaries have legally separate, taxable existences is critical to the outcome here because a taxed entity's minimum contacts with the taxing state cannot be established by a third party's minimum contacts with the taxing state. See Walden v. Fiore , 571 U.S. 277, 284-86, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014) (stating that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts **141 with a forum State" (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall , 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984) ) ); Hanson v. Denckla , 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident [party] cannot satisfy the requirement of contact with the forum State."). Here it was plaintiff's beneficiaries, not plaintiff, who reaped the benefits and protections of North Carolina's laws by residing here. Because plaintiff and plaintiff's beneficiaries are separate legal entities, due process was not satisfied solely from the beneficiaries' contacts with North Carolina.
Defendant challenges this conclusion by citing to two decisions in which foreign jurisdictions allegedly reached the opposite result. The Supreme Court of Connecticut held that taxation of an inter vivos trust did not violate due process because the beneficiary of the trust was a Connecticut domiciliary. Chase Manhattan Bank v. Gavin , 249 Conn. 172, 204, 733 A.2d 782, 802, cert. denied , 528 U.S. 965, 120 S.Ct. 401, 145 L.Ed.2d 312 (1999). Describing the domicile of the beneficiary as the "critical link," the Court in Gavin went on to reason that the beneficiary "enjoyed all of the protections and benefits afforded to other domiciliaries. Her right to the eventual receipt and enjoyment of the accumulated income was, and so long as she is such a domiciliary will continue to be, protected by the laws of the state." Id. at 204, 733 A.2d at 802. Therefore, the Court concluded in Gavin :
[J]ust as the state may tax the undistributed income of a trust based on the presence of the trustee in the state because it gives the trustee the protection and benefits of its laws; it may tax the same income based on the domicile of the sole noncontingent beneficiary because it gives her the same protections and benefits.
Id. at 205, 733 A.2d at 802 (internal citation omitted). Defendant also cites to a decision of the Supreme Court of California for the similar proposition that a "beneficiary's state of residence may properly tax the trust on income which is payable in the future to the beneficiary, although it is actually retained by the trust, since that state renders to the beneficiary that protection incident to his eventual enjoyment of such accumulated income." McCulloch v. Franchise Tax Bd. , 61 Cal. 2d 186, 196, 37 Cal.Rptr. 636, 390 P.2d 412, 419 (1964) (emphasis omitted).
We do not find either Gavin or McCulloch persuasive in deciding the present case. The Court in Gavin erroneously failed to consider that a trust has a legal existence apart from the beneficiary and that, **142 consequently, for taxation to satisfy due process pursuant to Quill , the trust itself must have "some definite link, some minimum connection" with the taxing state by "purposefully avail[ing] itself of the benefits of an economic market" in that state. Quill , 504 U.S. at 306-07, 112 S.Ct. at 1909-10. Furthermore, both the *50 Court in Gavin and defendant, in its arguments before this Court, misconstrue a trust's existence as "a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person," Wescott v. First & Citizens Nat'l Bank of Elizabeth City , 227 N.C. 39, 42, 40 S.E.2d 461, 462-63 (1946) (quoting Restatement (First) of Trusts § 2 (Am. Law Inst. 1935) ), to mean that any possible benefit received by the beneficiary may be imputed to the trust. That conclusion simply does not follow.
In contrast to Gavin , several other jurisdictions have applied reasoning similar to our analysis here in the context of deciding whether taxation of a given trust violated due process. See Linn v. Dep't of Revenue , 2013 IL App (4th) 121055, ¶ 33, 377 Ill.Dec. 922, 2 N.E.3d 1203, 1211 (2013) (applying Quill and holding that there was insufficient contact between Illinois and the taxed trust to satisfy due process when the trust, inter alia , "had nothing in and sought nothing from Illinois" and conducted all of its business in Texas), appeal dismissed , 387 Ill.Dec. 512, 22 N.E.3d 1165 (2014) ; Fielding v. Comm'r of Revenue , File Nos. 8911-R, 2017 WL 2484593, at *19-20 (Minn. T.C. May 31, 2017) (deciding that taxation of an inter vivos trust based solely on the in-state domicile of the grantor at the time the trust became irrevocable violated due process); Residuary Tr. A v. Director, Div. of Taxation , 27 N.J. Tax 68, 72-73, 78 (2013) (holding that neither the New Jersey domicile of a deceased testator nor the New Jersey business interests of several corporations in which the testamentary trust held stock justified New Jersey's taxation of "undistributed income from sources outside New Jersey" pursuant to the due process minimum contacts standard), aff'd per curiam , 28 N.J. Tax 541 (2015) ; T. Ryan Legg Irrevocable Tr. v. Testa , 149 Ohio St. 3d 376, 2016-Ohio-8418, 75 N.E.3d 184, at ¶ 68 (2016) (applying Quill and holding that a tax assessment by Ohio against a Delaware trust did not violate due process when the trust was created by an Ohio resident to dispose of his interest in a corporation that "conducted business in significant part in Ohio" and the settlor's "Ohio contacts [were] still material for constitutional purposes"), cert. denied , --- U.S. ----, 138 S.Ct. 222, 199 L.Ed.2d 121 (2017).
McCulloch , on the other hand, was decided before Quill Corporation , and therefore has a limited ability to inform our application of the Court's **143 due process analysis in Quill . Moreover, we find McCulloch to be factually distinguished from the present case because the taxed entity in that case was both a beneficiary and a trustee of the trust and also resided in the taxing jurisdiction. Indeed, in holding that the taxes at issue did not violate due process, the Court in McCulloch particularly relied on the fact that the trustee was a domiciliary of the taxing jurisdiction. See McCulloch , 61 Cal. 2d at 194, 37 Cal.Rptr. 636, 390 P.2d at 418. However, that circumstance is not present in this case.
As an alternative to its argument that due process was satisfied based on the North Carolina residence of the beneficiaries, defendant also presents the theory that taxation satisfied due process here because plaintiff "reached out to North Carolina by purposefully taking on a long-term relationship with the trust's beneficiaries, even though the trustees ... never entered the state." In support, defendant notes that Bernstein restructured the original trust for Kaestner's benefit, regularly communicated with her about management of plaintiff, and directed a loan to Kaestner from plaintiff's assets-all actions that, according to defendant, indicated that plaintiff would have a continuing relationship with Kaestner while she was in North Carolina.
This argument stems from misapprehension of both the facts and law relevant to this case. The undisputed evidence in the record shows that contact between Bernstein and Kaestner regarding administration of the trust was infrequent-consisting of only two meetings during the tax years in question, both of which occurred in New York. Any connection between plaintiff and North Carolina based on the loan is also irrelevant given that the loan was issued in January 2009, after the tax years at issue. Additionally, the United States Supreme Court has directed that " 'minimum contacts' analysis *51 looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden , 571 U.S. at 277, 134 S.Ct. at 1122 (citations omitted). As we have already stated, for due process purposes plaintiff, as a separate legal entity in the context of taxation, would have needed to purposefully avail itself of the benefits and protections offered by the State. See Quill , 504 U.S. at 306-07, 112 S.Ct. at 1909-10. Mere contact with a North Carolina beneficiary does not suffice.
For taxation of a foreign trust to satisfy the due process guarantee of the Fourteenth Amendment and the similar pledge in Article I, Section 19 of our state constitution, the trust must have some minimum contacts with the State of North Carolina such that the trust enjoys the benefits and protections of the State. When, as here, the income of a foreign trust is subject to taxation solely based on its beneficiaries'
**144 availing themselves of the benefits of our economy and the protections afforded by our laws, those guarantees are violated. Therefore, we hold that N.C.G.S. § 105-160.2 is unconstitutional as applied to collect income taxes from plaintiff for tax years 2005 through 2008. Accordingly, we affirm the decision of the Court of Appeals that affirmed the Business Court's order granting summary judgment for plaintiff and directed that defendant refund to plaintiff any taxes paid by plaintiff pursuant to section 105-160.2 for tax years 2005 through 2008.
AFFIRMED.