Argued and submitted May 6, judgment of Tax Court affirmed July 29, 2021

ESTATE OF HELENE J. EVANS,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent.*

(TC 5335) (SC S067899)

492 P3d 47

The estate of a deceased Oregon resident who, during her lifetime, had been the sole income beneficiary of a Montana trust that had been created under her husband's will upon his death, challenged the Department of Revenue's inclusion of the trust's principal assets in the decedent's taxable estate in Oregon, arguing that Oregon's taxation of those assets violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The decedent's estate argued that, because the decedent had not had any control over the management or disposition of the assets of the Montana trust, Oregon had not obtained the required "minimum connection" to those assets by virtue of its decedent resident's status as the trust's beneficiary. It also argued that that due process issue was not resolved by the facts that (1) the decedent's interest in the trust assets had been designated as "Qualified Terminable Interest Property" (QTIP) and thus was part of the decedent's estate for federal tax purposes; and (2) Oregon uses the value of an Oregon decedent's federal estate as the value of his or her Oregon estate. When the Tax Court rejected that due process argument and affirmed the department's decision, the estate appealed. *Held*: Whether or not she had control over the trust assets, the decedent had sufficient enjoyment of the assets during her lifetime that the assets could not dissociated from her, meaning that, through the decedent, who had resided in Oregon, Oregon had the minimum connection to the trust assets that due process requires before Oregon may tax the assets.

The judgment of the Tax Court is affirmed.

En Banc

On appeal from the Oregon Tax Court.*

Timothy R. Volpert, Tim Volpert PC, Portland, argued the cause and filed the briefs for appellant. Also on the briefs was Carol Vogt Lavine, Carol Vogt Lavine LLC, Milwaukie.

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. Also

_____

* Unpublished decision issued May 28, 2020.

on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General.

FLYNN, J.

The judgment of the Tax Court is affirmed.

**FLYNN, J.**

This case reaches us on direct appeal from a decision of the Oregon Tax Court. The estate of Helene Evans, a deceased Oregon resident, challenges the Tax Court's determination that the Department of Revenue lawfully included in Evans's taxable Oregon estate the principal assets of a Montana trust, of which Evans had been the income beneficiary. Although Evans had a right to receive—and had received—income generated by those assets during her lifetime and potentially had the right to tap the assets themselves, the estate (plaintiff) asserts that she had not owned and had had no control over the assets. Under those circumstances, plaintiff argues, Oregon did not have the kind of connection to the trust assets that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires for a state to impose a tax on a person, property, or transaction. We conclude that Oregon's imposition of its estate tax on the trust assets in this case comports with the requirements of due process. We, therefore, affirm the judgment of the Tax Court.

## BACKGROUND

At the time of her death, Helene Evans was a lifetime beneficiary of a trust (the Gillam trust) that had been created upon the death of her husband, Donald Gillam. After Evans herself died in 2015, having lived in Oregon since 2012 when the trust was created, the present dispute arose over whether Oregon can enforce its statutory requirement that the value of the assets that were held in the trust must be included in Evans's taxable estate. Because that tax arises from the intersection of Oregon and federal estate tax law, we briefly describe the applicable provisions.

Under federal estate tax law, there can be no marital deduction for property passing from the decedent to his or her spouse when what is passed to the spouse is a mere "terminable interest" in the property, which would include an income interest or other interest in property held in a trust that terminates upon the spouse's death. 20 USC § 2056(b)(1). The Internal Revenue Code provides an exception to that rule if the property is "Qualified Terminable Interest Property" (QTIP), as defined at 26 USC § 2056(b)(7). Under

that provision, a terminable interest passing to a decedent's spouse constitutes QTIP if three conditions are met: (1) the surviving spouse must be entitled to all the income from the property for life; (2) no person can have a power to direct any part of the property to any person other than the surviving spouse; and (3) the decedent's executor has made an election to designate the property as QTIP. Such an election allows the property to escape taxation as part of the decedent's estate, but any property deducted from the decedent's estate as QTIP must, upon the surviving spouse's death, be included in, and taxed as part of, the spouse's estate. 26 USC § 2044.[1]

Thus, for *federal* tax purposes, property that was designated as QTIP and thus excluded from a decedent's estate under 26 USC § 2056(b)(7) must be *included* in the surviving spouse's federal estate upon his or her death. 26 USC § 2044. And Oregon law provides that, for purposes of Oregon taxes, a resident decedent's taxable estate is the same as his or her federal taxable estate, taking into account any Oregon modifications. ORS 118.010(3).

Returning to the facts of this case, Gillam's will had provided that, upon his death, certain of his assets—including stocks, bonds, and similar intangible property held in Montana banks and investment firms—would be placed in a testamentary trust established under Montana law, which would be administered by a single trustee (his son, a Montana resident). The will also provided that Evans and other designated persons would receive the income generated by the trust, along with such portions of the principal as the trustee, in his sole discretion, deemed appropriate after consulting with Evans about the needs of the various beneficiaries; that Gillam's executor could elect to qualify all or part of the trust for the marital deduction from

---

[1] A prominent treatise on tax law explains that

"[t]he principal consequence of the QTIP election is that the property remaining at the surviving spouse's death must be included *in the spouse's gross estate*. Sections 2056(b)(5) and (7) essentially allow the marital deduction on the condition that the property be subject to gift or estate tax *when it passes from the spouse to someone else*."

Boris Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* § 129.3 (3d ed 2019) (emphases added).

federal or state estate taxes; and that, upon Evans's death, the remaining assets of the trust would be divided among Gillam's children.

Gillam died in 2012 as a resident of Montana, a few weeks after Evans had moved from that state to Oregon. Upon Gillam's death, his executor transferred the intangible property that had been designated in Gillam's will to the trust. Wishing to make the election that would qualify the trust for the federal estate tax marital deduction, as contemplated in the will, the executor petitioned a Montana court to reform the will and modify the trust in a way that would support that election.

To allow the election that Gillam's executor sought, the Montana court agreed to reform Gillam's will and modify the Gillam Trust so that the trust property met the statutory requirements for designation as QTIP. Under the modifications that were approved, the trustee was required to pay all of the net income from the trust to Evans, as well as "such amounts from the principal" as the trustee deemed necessary for Evans's "health, education, maintenance, or support" in her "accustomed manner of living," during Evans's lifetime. The trustee was prohibited from distributing either trust income or principal to any person *other* than Evans during her lifetime; but, upon Evans's death, he was to distribute the principal to Gillam's children. And upon Evans's death, the trustee was to pay, out of the trust principal, the "federal and state death taxes * * * imposed by any jurisdiction by reason of [Evans's] death and with respect to any property included in th[e] trust."

Once the trust had been modified, Gillam's executor elected to designate the trust property as QTIP, and the property was excluded from Gillam's estate for purposes of the federal estate tax. The QTIP designation had no effect on taxes paid to the state of Montana, because Montana does not have an estate tax.

During Evans's life, there was one significant change with respect to her interest in the trust. At some point, a dispute arose between Evans and the trustee about how much of the trust principal should be distributed to Evans,

in addition to the trust income, to maintain her accustomed manner of living. Although, under the terms of the trust, the amount of any such distributions from principal was within the trustee's sole discretion, Evans had a right under Montana law to require the trustee to make the trust property productive of income or convert it to productive property, if the amounts that the trustee distributed to her were "insufficient to provide [her] with the beneficial enjoyment required to obtain the marital deduction." Montana Code Annotated (MCA) § 72-34-445. In 2014, Evans and the trustee entered into a settlement agreement whereby Evans released her rights under MCA § 72-34-445, along with her right under the trust terms to receive distributions from principal to maintain her accustomed manner of living (as deemed necessary by the trustee), in exchange for a single lump sum payment of $750,000 from the trust principal and stipulated monthly payments of $10,833.33 for her lifetime.[2]

When Evans herself died in Oregon in 2015, plaintiff initially filed an Oregon estate tax return that included the value of the assets that were held in the trust. In doing so, plaintiff was following the requirement of ORS 118.010(3) that a decedent's taxable estate is generally the same as his or her federal taxable estate.

Later, after paying the total tax liability on the estate as set out in the initial estate tax return, plaintiff sought to revise the return to exclude the value of the principal assets of the Gillam Trust and requested a refund of the tax that had been paid on those trust assets. Plaintiff argued that, regardless of what ORS 118.010(3) and other Oregon tax statutes might require, imposing Oregon's estate tax on the assets of the trust, when Oregon's sole connection to those assets was through Evans, who had never owned or controlled them but had merely received income from them, violated the Due Process Clause of the Fourteenth Amendment. The Department of Revenue rejected that due process argument and denied the requested revision and refund (except for a small amount relating to legal fees).

---

[2] Evans paid Oregon income tax on those distributions from the trust.

## THE TAX COURT DECISION

Plaintiff appealed to the Tax Court, and both plaintiff and the department filed motions for summary judgment. The Tax Court granted the department's motion and denied plaintiff's motion, explaining its decision in an unpublished order. The Tax Court first observed that, under the standard articulated by the United States Supreme Court, a tax imposed by a state does not offend the Due Process Clause if: (1) there is some minimum link or connection between the state and the person, property or transaction it seeks to tax; and (2) there is a rational relationship between the taxable item and the values and benefits that the taxing state provides. *Estate of Helene J. Evans v. Dept. of Rev.*, TC 5335, 7-8 (Or Tax, May 28, 2020) (summarizing *North Carolina Dept. of Rev. v. The Kimberley Rice Kaestner 1992 Family Trust*, ___ US ___, ___, 139 S Ct 2213, 2219-20, 204 L Ed 2d 621 (2019)). Addressing the first requirement, the Tax Court opined that, under *Curry v. McCanless*, 307 US 357, 59 S Ct 900, 83 L Ed 1339 (1939)—a case involving a state's imposition of its estate tax on intangible trust property, the income from which a deceased domiciliary of the state had had a lifetime interest—"the requisite minimum connection to impose an estate or inheritance tax always exists between the state of a person's domicile and the rights that the person holds in intangible property." TC 5335 at 10. The court explained that the required minimum connection existed between the trust property and Oregon (Evans's state of domicile) due to Evans's "exclusive lifetime interest" in the trust. *Id.* at 10-11. Turning to the second, "rational relationship" requirement, the Tax Court cited *Curry* and another estate tax case involving similar facts, *Whitney v. State Tax Commission of New York*, 309 US 530, 60 S Ct 635, 84 L Ed 909 (1940), for the proposition that the Due Process Clause permits imposition of an estate or transfer tax on the "full value" of trust assets that are acquired by one person "'*through* the death of another person,'" even when the decedent had had no "beneficial interest" in the assets themselves. TC 5335 at 12 (quoting *Whitney*, 309 Or at 538 (emphasis added by Tax Court)). The Tax Court concluded that those cases were on all fours with the present case and that, as such, the rational relationship requirement also had been satisfied. TC 5335 at 11-16.

## PLAINTIFF'S ARGUMENTS

Before this court, plaintiff argues that the Tax Court mischaracterized the due process cases on which it relied. It contends that those same cases—and others—show that the Due Process Clause does not permit a state to impose an estate tax on intangible trust assets solely on the ground that a deceased resident of the state had enjoyed the income generated by those assets during her lifetime—unless the decedent had had some practical control of the assets during her lifetime. Plaintiff insists that Evans had no such control of the assets of the Gillam Trust and, therefore, her death as an Oregon resident did not establish the kind of link between Oregon and those trust assets that the Due Process Clause requires. Neither, plaintiff argues, can Oregon rely on the federal requirement that the trust assets must be treated as part of Evans's property for purposes of the federal estate tax (because of the QTIP election), since that federal requirement is simply a legal fiction and does not establish Evans's actual control, possession, or enjoyment of the trust assets.

## ANALYSIS

We begin by emphasizing that plaintiff does not challenge the department's statutory obligation under ORS 18.010(3) to include the trust assets in Evans's Oregon taxable estate. Plaintiff's sole argument is that doing so violates the Due Process Clause. To respond to that argument, we first consider general due process limitations on a state's taxing authority and then turn to an application of those principles in the circumstance of this case.

The Due Process Clause prohibits governmental action that "deprive[s] any person of life, liberty or property, without due process of law." Implicit in the clause is a requirement that the state exercise its authority only in ways that are consistent with "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 US 457, 463, 61 S Ct 339, 85 L Ed 278 (1940).

With respect to a state's authority to impose any kind of tax, the essential due process issue is whether the tax "bears fiscal relation to protection, opportunities and

benefits given by the state," *i.e.*, "whether the state has given anything for which it can ask return." *Wisconsin v. J. C. Penney Co.*, 311 US 435, 444, 61 S Ct 246, 85 L Ed 267 (1940). As the Tax Court explained, the United States Supreme Court has formulated the issue in terms of a two-part test: First, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax," and second, the "income attributed to the State for tax purposes must be rationally related to 'values connected with the taxing State.'" *Quill Corp. v. North Dakota*, 504 US 298, 306, 112 S Ct 1904, 119 L Ed 2d 91 (1992) (*quoting Miller Brothers Co. v. Maryland*, 347 US 340, 344-45, 74 S Ct 535, 98 L Ed 744 (1954), and *Moorman Mfg. Co. v. Bair*, 437 US 267, 273, 98 S Ct 2340, 57 L Ed 2d 197 (1978)); *see also Kaestner*, ___ US at ___, 139 S Ct at 2220 (stating the same test). Here, only the first requirement—a "minimum connection"—is at issue; the second requirement appears to be at issue only when a state taxes a portion of the income earned by an entity operating in interstate commerce.[3] *See Norfolk & W. Ry. Co. v. Missouri State Tax Comm'n*, 390 US 317, 325, 88 S Ct 995, 19 L Ed 2d 1201 (1968) (explaining that "[a]ny formula used" to allocate to the state a portion of the income of an interstate taxpayer "must bear a rational relationship, both on its face and in its application, to property values connected with the taxing State").

The "minimum connection" requirement is assessed under the same flexible standard that is used to determine whether a state has sufficient minimum contacts with a person or entity to exercise jurisdiction over that person or entity. *Quill*, 504 US at 307-08. Whether the due process challenge is to a state's attempt to exercise jurisdiction or to its attempt to impose a tax, the overriding principle is the

---

[3] The state contends that it "found no case where the Court has applied [the rationally related] standard to an estate tax," and taxpayer does not disagree. The Tax Court nevertheless considered one of plaintiff's arguments in the course of addressing the rationally related standard—plaintiff's argument that a state resident's interest in the income generated by trust assets does not support the state's taxation of the entirety of those assets. The federal cases show, however, that arguments along those lines are relevant under the first, "minimum connection" inquiry. *See, e.g., Kaestner*, ___ US at ___ n 5, ___, 139 S Ct at 2220 n 5, 2223 (considering the interest of North Carolina resident in trust after specifying that Court was not addressing the second requirement because the first was not satisfied).

same: "[O]nly those who derive 'benefits and protection' from associating with a state should have obligations to the State in question." *Kaestner*, ___ US at ___, 139 S Ct at 2220 (citing *International Shoe Co. v Washington*, 326 US 310, 319, 66 S Ct 1904, 90 L Ed 95 (1945)). *See also J. C. Penney Co.*, 311 US at 444 ("A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society").

Under that rule, a state unquestionably may tax interests in tangible property that is located within its borders. *Curry*, 307 US at 364. But a state also may tax interests in *intangible* property, consistently with due process, if the taxpayer has in some sense enjoyed the "benefits and protections" that the state offers. With respect to such intangible property that exists outside of the taxing state, the benefits and protections that are relevant are those that the state offers to persons or entities within the state who own or have similarly substantial interests in the property. As the United States Supreme Court explained in *Curry*, rights to intangibles "are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts." 307 US at 366. As a result, "[t]he power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights." *Id.* Thus, the Court concluded: "Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived." *Id.*

In other words, whether a state has the necessary minimum connection to intangible property that is connected to the state only through an in-state resident depends on the nature of the in-state resident's interest in the property. If the resident's interest in the intangible property is sufficiently substantial, such that it is a source of actual or

potential wealth to and cannot be dissociated from the resident, then his or her enjoyment of the benefits and protections offered by the state—including simply the benefit of living in an "orderly, civilized society" for which the state is responsible, *J.C. Penney Co.*, 311 US at 444—is a sufficient justification for the state to impose its tax on that property.

   *Kaestner*, the case cited by the Tax Court, is a useful starting point for understanding the essential due process requirement in the context of trusts. At issue in *Kaestner* was a North Carolina tax on any trust income that "'is for the benefit of' a North Carolina resident." ___ US at ___, 139 S Ct at 2219. North Carolina attempted to impose that tax on income generated over a four-year period by a trust that was administered under New York law by a trustee who was a New York resident, on the ground that the trust's sole named beneficiaries resided in North Carolina. Those beneficiaries, however, had not received any distributions from the trust during the relevant tax years. Indeed, the beneficiaries had had no right to distributions because, under the terms of the trust, the trustee had "absolute discretion" to distribute the trust income and assets to the beneficiaries when and in whatever amounts he might decide, and during the period in question, the trustee had chosen not to distribute any of the income that the trust had accumulated. *Id.* at ___, 139 S Ct at 2218-19. Confronted with the beneficiaries' due process challenge to North Carolina's imposition of the tax, the Court reviewed its past cases dealing with state taxes on trust assets and income based on a beneficiary's residency in the state and identified the operative rule:

> "When a tax is premised on the in-state residence of a beneficiary, the Constitution requires that the resident have some degree of possession, control or enjoyment of the trust property or a right to receive that property before the state can tax the asset. Otherwise, the state's relationship to the object of its tax is too attenuated to create the minimum connection that the Constitution requires."

*Id.* at ___, 139 S Ct at 2222 (citations omitted). Applying that rule to the circumstances of the Kaestner trust, the Court concluded that the Due Process Clause precluded North Carolina from taxing the trust assets during the tax years at issue, emphasizing three facts: the in-state beneficiaries

had not received any income from the trust during those tax years, they had no right to control the trust or distributions therefrom, and they could not count on necessarily receiving any amount from the trust, even in the future. *Id.* at ___, 139 S Ct at 2223.

*Kaestner* is only a starting point, however. Although it sets out a general rule requiring that an in-state trust beneficiary "have some degree of possession, control or enjoyment of the trust property or a right to receive that property" before the state can tax that property, it does not explore what might qualify as "some degree." The parties point to much earlier Supreme Court cases as sources of additional guidance regarding what it means for a resident of a state to have had "some degree of possession, control or enjoyment" of intangible trust assets such that, upon their death, those trust assets may be taxed as part of their estate. The parties focus their arguments on three estate tax cases, all decided within a two-year period some eighty years ago—*Curry*, 307 US 357, *Graves v. Elliot*, 307 US 383, 59 S Ct 913, 83 L Ed 1356 (1939), and *Whitney*, 309 US 530.

In the first case, *Curry*, a resident of Tennessee had created a trust, funded by stocks and other intangibles, designating herself as the income beneficiary for life and reserving to herself certain powers, including the powers to direct the sale of the trust property and to dispose of the trust property by will. An Alabama corporation was designated as the trustee, and the trust was administered in Alabama and under the laws of that state. 307 US at 360-61. In her will, the trustor bequeathed the trust property to the trustee in trust for the benefit of her husband and children. *Id.* at 361.

Upon the trustor's death, Alabama and Tennessee both sought to impose an estate tax on the trust property, and the trustor's executors in Tennessee sought a declaratory judgment in the Tennessee courts as to the two states' authority in that regard. *Id.* at 361-62. On appeal from a Tennessee Supreme Court decision holding that only Tennessee could impose its tax, the United States Supreme Court reversed, holding that both states could impose their transfer taxes consistently with due process. The Court

reasoned that Alabama could do so by virtue of the fact that an Alabama trustee had legal ownership of the intangible property, the beneficial interest in which was transferred upon the trustor's death, *id.* at 370, while Tennessee could do so because of the in-state residency of a decedent who, in life, had had a right to control the trust property, including by directing its disposition upon her death, *id.* at 370-71. With respect to the latter point, the Court explained:

> "The decedent's power to dispose of the intangibles was a potential source of wealth which was property in her hands from which she was under the highest obligation in common with her fellow citizens of Tennessee, to contribute to the support of the government whose protection she enjoyed. Exercise of that power, which was in her complete and exclusive control in Tennessee, was made a taxable event by the statutes of the state."

*Id.* The Court noted, too, that "[f]or purposes of taxation, a general power of appointment *** has hitherto been regarded by this Court as equivalent to ownership of the property subject to the power." *Id.* at 371.

In *Graves*, the Court reinforced its holding in *Curry* and clarified that the significance of the power to dispose of intangible property was not limited to an *exercise* of that power but extended also to a relinquishment of such power at death, through a failure to exercise it in life. The trust at issue in *Graves* was created by a New York resident who, during her lifetime, had transferred certain intangible property to a bank in Colorado to be held in trust. 307 US at 384-85. The trust agreement provided that the trustee was to pay the income from the trust to the decedent's daughter for life and, thereafter, to the daughter's children until they reached a certain age, at which point the children were to receive a proportionate share of the trust principal. The decedent had reserved to herself the right to remove the trustee, change the trust beneficiaries, or revoke the trust and revest title to the property in herself at any point during her lifetime. *Id.*

When the decedent died—without exercising any of those reserved rights—New York tax authorities included the intangible property held in the Colorado trust in its

assessment of decedent's New York estate, but the New York Court of Appeals held that inclusion of that property infringed due process. *Id*. at 385-86. The Supreme Court reversed, emphasizing as it had in *Curry* that "the power of disposition of property is the equivalent of ownership. It is a potential source of wealth and its exercise in the case of intangibles is the appropriate subject of taxation at the place of the domicile of the owner of the power." *Id*. at 386. As a result, "[t]he relinquishment at death, in consequence of the non-exercise in life, of a power to revoke a trust created by a decedent is likewise an appropriate subject of taxation." *Id*. Relying on its reasoning in *Curry*, the Court concluded:

> "[W]e cannot say that the legal interest of decedent in the intangibles held in trust in Colorado was so dissociated from her person as to be beyond the taxing jurisdiction of the state of her domicile more than her other rights in intangibles. Her right to revoke the trust and to demand the transmission to her of the intangibles by the trustee and the delivery to her of their physical evidences was a potential source of wealth, having the attributes of property. As in the case of any other intangibles which she possessed, control over her person and estate at the place of her domicile and her duty to contribute to the support of government there afford adequate constitutional bases for imposition of a tax measured by the value of the intangibles transmitted or relinquished by her at death."

*Id*. at 386-87.

The final case that we consider, *Whitney*, differs from *Curry* and *Graves* in that the due process question had nothing to do with *where* intangible property held in trust may be taxed constitutionally and therefore did not include any discussion that might clarify the due process "minimum connection" requirement. The trust at issue in *Whitney* was established and funded in New York by the will of Cornelius Vanderbilt. It provided for an annual income to Vanderbilt's wife and also gave Mrs. Vanderbilt the power to dispose of the trust principal among the couple's four children in her will, in such proportions as she might choose. The trust further provided that, if Mrs. Vanderbilt did not exercise that "special power of appointment" in her will, then the trust property would be divided equally among the four children

upon her death. 309 US at 534-35. Mrs. Vanderbilt *did* exercise the power of appointment in her will and, upon her death, the taxing authorities of New York (where the trust was administered and Mrs. Vanderbilt had at all times resided) included the value of the trust principal in Mrs. Vanderbilt's gross estate for purposes of calculating the state's estate tax. Mrs. Vanderbilt's beneficiaries and executors challenged New York's inclusion of the trust principal in her estate, arguing that doing so violated the Due Process Clause, given that Mrs. Vanderbilt had not been the "beneficial owner" of the trust corpus—by which the challengers meant that she could not use the corpus of the trust herself, could not appoint it to her own estate, and could not direct it to her creditors. *Id.* at 535-38.

The Supreme Court rejected the due process challenge. The Court explained that, to the extent that New York's estate tax statute was aimed at diverting to the community a portion of the total wealth released by a death, the state was

> "not confined to that kind of wealth which was, in colloquial language, 'owned' by a decedent before death, nor even to that over which he had an unrestricted power of testamentary disposition."

*Id.* at 538. Instead,

> "[i]t is enough that one person acquires economic interests in property through the death of another person, even though such acquisition is in part the automatic consequence of death or related to the decedent merely because of his power to designate to whom and in what proportions among a restricted class the benefits shall fall."

*Id.* at 538-39. After pointing to various other circumstances in which property not "beneficially owned" by a decedent may nevertheless be included in his or her estate, the Court made an even more expansive statement:

> "A person may by his death bring into being greater interests in property than he himself has ever enjoyed, and the state may turn advantages thus realized into a source of revenue[.] *** [I]f death may be made the occasion for tax-ing property in which the decedent had no 'beneficial interest,' then the measurement of that tax by the decedent's total

*wealth-disposing power is merely an exercise of legislative discretion in determining what the state shall take in return for allowing the transfer.*"

*Id.* at 539-40 (emphasis added).

The parties here draw radically different conclusions from the foregoing cases about the correct application, in the estate tax context, of the *Kaestner* rule. To reiterate, *Kaestner* holds that, to the extent that a state relies on the in-state residency of a constituent[4] of an out-of-state trust to tax the trust property, the demands of due process are satisfied only if the state-resident constituent has "some degree of possession, control or enjoyment of the trust property or a right to receive that property." ___ US at ___, 139 S Ct at 2222. Plaintiff contends that the cases all support its contention that a decedent who was the income beneficiary of an out-of-state trust must have had some *actual control* over the assets of the trust before the decedent's home state may impose its estate tax on those assets. More specifically, plaintiff adds, the cases show that "for due process purposes, the minimum, requisite control over the principal of a trust is the grant of at least some ability to decide or control how the trust principal will be invested, managed, or distributed." Plaintiff then asserts that, because Evans had had no ability to control how the Gillam Trust assets were invested, managed, or even distributed upon her death, Oregon could not rely on her in-state residency at the time of her death to establish the required minimum connection to those assets.

The department contends that *Curry*, *Graves*, and *Whitney* merely offer examples of how the due process requirement that the decedent have "some degree of possession, control or enjoyment of the trust property or a right to receive that property," *Kaestner*, ___ US at ___, 139 S Ct at 2222, may be satisfied and do not support the rule that plaintiff purports to draw from them. According to the department, those cases establish that a state may include the assets of an out-of-state trust in a decedent's estate when the decedent had either complete (in *Curry* and *Graves*) or more limited (*Whitney*) control respecting the disposition of

---

[4] *Kaestner* uses the inclusive term "trust constituent" to refer to a trust's "settlor, trustee, or beneficiary." ___ US at ___, 139 S Ct at 2221.

the trust assets, but they do not establish that due process requires such control or requires any other specific feature in an in-state decedent's relationship with an out-of-state trust before the state of residence may impose its estate tax on the trust assets. In particular, the department contends that those cases do not speak to the circumstance here, in which decedent had a large degree of *enjoyment* of the trust property by virtue of her exclusive rights under the terms of the trust.

We agree with the department that the cited cases do not establish that a state may impose an estate tax on the assets of an out-of-state trust only if the deceased beneficiary had the ability to control how the assets of that out-of-state trust were managed, invested, or distributed. Instead, based on the rule announced in *Kaestner*, ___ US at ___, 139 S Ct at 2222, we conclude that the demands of due process also could be satisfied by a showing that a resident decedent had some degree of possession or enjoyment of, or right to receive, the trust property. *See Kaestner*, ___ US at ___, 139 S Ct at 2223-24 (demonstrating that court looks at whether beneficiaries had some enjoyment or future right to receive trust property, not just at whether they had right to control trust property, when considering "minimum connection" question).

## APPLICATION

Applying that standard to this case, we conclude that Evans had sufficient "enjoyment" of the trust principal (in addition to the enjoyment of the income generated thereby) to satisfy *Kaestner*'s requirement of "some degree of possession, control, or enjoyment" of the trust assets and thus to permit Oregon to include those trust assets in Evans's taxable estate.[5] While, under her husband's modified will, Evans could not claim a right to the whole of the trust principal or any particular portion thereof, she had a potential right to receive distributions of principal, to the extent that trust income was insufficient to satisfy her needs. No

---

[5] "Enjoyment," in this context, appears to derive its meaning from the intransitive form of the verb "enjoy," *i.e.*, "to have for ones use, benefit, or lot." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/enjoy (accessed July 21, 2021).

other person could receive any part of the principal during Evans's lifetime. And while the remainder beneficiaries had a right to whatever was left of the principal after Evans's death, they could not prevent her from receiving distributions of principal that would reduce or even eliminate their own ultimate shares in the remainder.

Even under the settlement in which Evans ceded her rights with respect to the trust principal under her husband's will and Montana law, she received a substantial one-time payment that consisted of part of the principal. And she retained a potential right to distributions from principal, to the extent that the trust principal failed to generate income sufficient to cover the agreed-upon fixed monthly distribution. In all of those ways, Evans could and did access the trust principal for her own use and benefit in a way that no other person could during her lifetime. We conclude that Evans thereby had a substantial measure of enjoyment of the trust principal. And therefore, under the rule set out in *Kaestner*, Oregon could rely on Evans's status as an Oregon resident to impose its taxes on that trust principal without violating the Due Process Clause.[6]

We caution, however, that our focus on Evans's enjoyment of the trust assets should not be taken as a conclusion that the circumstances here could not be considered sufficient control of the trust assets. Plaintiff has insisted that Evans never had control of the trust assets in the required sense ("some ability to decide or control how

---

[6] Evans also had at least a potential "right to receive" all the trust assets within the meaning of the *Kaestner* rule. A term of her husband's will that was unaffected by the settlement provided:

"If any trust created hereunder shall violate any applicable rule against perpetuities, accumulations, or any similar rule or law, my trustee is hereby directed to terminate such trust on the date limited by such rule or law, and thereupon, the property held in such trust shall be distributed to the persons then entitled to share the income therefrom in the proportions to which they are entitled to share the income therefrom, notwithstanding any provision of this will to the contrary."

Under that term of the will, Evans would have been entitled to receive the trust assets if the trustee had been required to dissolve it for a violation of law—and, indeed, would be the only person so entitled. The existence of that contingent right adds to our conclusion that, overall, Evans had the requisite "degree of possession, control or enjoyment of the trust property or [] right to receive that property." *Kaestner*, ___ US at ___, 139 S Ct at 2222.

the trust principal will be invested, managed, or distributed") because the management and distribution of the assets was completely in the hands of the trustee. But plaintiff's description of Evans's rights—or lack thereof—is not entirely accurate. The modified will that controlled the trust clearly contemplated that Evans would receive distributions from the trust assets as "necessary for [her] health, education, maintenance or support in [her] accustomed manner of living." The fact that it directed that those distributions be in "such amounts from the principal *as the trustee determines* to be necessary" for that purpose did not foreclose the possibility that Evans could judicially compel distributions of principal to herself, if her needs were not being met. Furthermore, under Montana law, Evans could force the trustee to take certain actions with respect to the trust property if the amount of trust income that he distributed to her was "insufficient to provide [her] with the beneficial enjoyment required to obtain the marital deduction." MCA § 72-34-445. Evans did ultimately agree to give up those potential claims in exchange for a lump sum payment from principal and a right to a monthly distribution set at a specified amount. But we leave for another day the question of whether such a settlement rendered irrelevant any potential control of the trust principal that beneficiary might have had for purposes of the *Kaestner* rule or whether the ability to enter into a settlement regarding distribution of the trust assets was itself a demonstration of control. We need not resolve those questions because we conclude that Evans otherwise satisfied *Kaestner*'s requirement that she have sufficient "possession, control, or enjoyment" of the trust assets to permit Oregon to include the assets in Evans's taxable estate.

Plaintiff, nevertheless, insists that satisfying the *Kaestner* test is not enough, that due process requires more in this case. Seemingly appealing to a more generic understanding of what the Due Process Clause requires, plaintiff contends that it is confiscatory and unfair to allow Oregon to tax the assets of a Montana trust based solely on the facts that the trust assets were designated as QTIP for purposes of federal estate taxes and that the trust's income beneficiary happened to be living in Oregon when she died. Plaintiff's

points in that regard appear to be twofold. First, plaintiff suggests that it is unfair for Oregon to rely on the *federal* tax QTIP election of Gillam's executor as a statutory basis for including the trust assets in Evans's *Oregon* estate, when the quid pro quo rationale that justifies the QTIP mechanism—inclusion of the value of trust property in the estate of a surviving spouse in exchange for the earlier deduction of the value of that property from the estate of the original decedent—is not relevant to Evans's Oregon estate (because there had been no earlier deduction from Gillam's estate either in Oregon or Montana). And second, plaintiff suggests that including the trust property in Evans's Oregon estate would be unexpected and arbitrary. According to plaintiff, neither Gillam, in creating the trust with the federal marital deduction in mind, nor his executor, in electing to designate the trust property as QTIP, could have foreseen that the trust assets would thereby become subject to taxation in Oregon, based on the mere happenstance that Evans, the income beneficiary, moved to and died here.

Plaintiff's first argument misapprehends the kind of fairness that the Due Process Clause requires. As explained above, a QTIP election permits a married couple to defer certain taxes that otherwise would be imposed on the estate of the first to die until the death of the survivor. It does so by allowing a deduction of QTIP-designated trust property from the original decedent's estate *in exchange* for the subsequent inclusion of the same trust property in the estate of the survivor. In the many states that, like Oregon, tie the value of a decedent's estate for state tax purposes to the value of his or her federal estate, a federal QTIP election generally will result in application of the same bargain or exchange to the state taxes that pertain to the affected individuals: Property in a QTIP trust will not be subject to either federal or state estate taxes when the first spouse dies, but will later be subject to both the federal and state taxation as part of the surviving spouse's estate.

We recognize that differences in state tax laws mean that a federal QTIP election will not always produce a corresponding benefit with respect to the original decedent's state-level estate—as here because Montana does not tax

estates—yet another state in which the surviving spouse dies includes the trust property in that surviving spouse's taxable estate. That difference in outcome is simply the result of permissible differences in the tax laws of the states that are involved, not a violation of the Due Process Clause.

Plaintiff also suggests that Oregon's inclusion of the trust assets in Evans's Oregon estate is unfair in the sense of being caused by an unforeseen and arbitrary event— plaintiff's relocation to and death in Oregon, a state that has an estate tax and that bases that estate tax on the value of the decedent's *federal* taxable estate. But, as the department points out, the possibility of incurring additional tax liability depending on where Evans chose to reside was inherent in the election to designate the assets of the Gillam Trust as QTIP and a risk that Gillam's executor knowingly took when he made that election. Evidence of that fact is in Article Fifth of Gillam's modified will, which, in conjunction with authorizing the QTIP election, directs that, upon Evans's death, the trustee of the Gillam Trust shall pay over to the legal representative of her estate such amounts as the trustee shall determine for the payment of "federal and state death taxes \*\*\* imposed *by any jurisdiction* by reason of [Evans's] death and with respect to any property included in this trust." (Emphasis added.) Moreover, Evans's move to Oregon was quite the opposite of unforeseen: She moved to Oregon a month before Gillam died, and many months before Gillam's executor even began the process of modifying Gillam's will to allow the QTIP election.

We are persuaded, in fact, that Oregon's inclusion of the assets of the Gillam Trust in Evans's Oregon estate should be considered fair precisely because of the choice by Gillam's executor to designate those assets as QTIP. Our conclusion that Evans's interests in the assets of the trust were such that Oregon's imposition of its estate tax on those assets does not offend due process draws on the specific context of ORS 118.005(7), which bases Oregon's estate tax on the value of a decedent's federal estate; a QTIP election that resulted in a reduction to Gillam's federal estate in exchange for a subsequent increase in Evans's federal estate; and an agreement that the trust—not Evans's heirs—would be

liable for any resulting increase in Evans's federal and state estate taxes.

We have determined that Evans had sufficient enjoyment of the assets of the Gillam Trust during her lifetime that those assets cannot be dissociated from her, and that therefore, through Evans, Oregon had the minimum connection to the trust assets that due process requires before Oregon may tax the assets. And we have rejected plaintiff's additional arguments that, even if Oregon had the required minimum connection to the assets, its taxation of the assets is nonetheless unfair—and thus violates the Due Process Clause. It follows that the Tax Court did not err when it determined that Oregon's inclusion of the trust assets in Evans's Oregon estate was consistent with due process.

The judgment of the Tax Court is affirmed.