IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| STEVEN E. SPEER and SARAH H. SPEER, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 220449G |
| v. | ) ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) ) | **DECISION** |

This case concerns the application of the credit allowed under ORS 316.082(1) for income tax imposed by another state where gross tax liability in the other state is reduced by a nonrefundable tax credit. The tax year at issue is 2018. Plaintiffs' summary judgment motion was briefed and argued by Joseph Henchman and Lindsey Carpenter of the National Taxpayers Union Foundation. Defendant's cross-motion for summary judgment was briefed and argued by Darren Weirnick and Belle Na of the Oregon Department of Justice.

## I. STATEMENT OF FACTS

The pertinent facts are not in dispute. In 2018, Plaintiffs were part-year Oregon residents. (Stip Facts at 2, ¶ 1.) Mr. Speer was a minority shareholder in a Wisconsin S corporation called New Glarus Brewing Company, Inc. (NGB). (*Id.*, ¶ 3.) Mr. Speer did not materially participate in NGB's business operations, and NGB did not engage in any commercial activity in Oregon. (*Id.* at 2-3, ¶ 5.) Over a million dollars in adjusted gross income passed through to Mr. Speer from NGB in 2018, although NGB distributed only as much of those earnings as it deemed sufficient for its minority shareholders to cover their individual income taxes. (*Id.*, ¶¶ 5-6.)

Lines 34 to 63 of Plaintiffs' 2018 Wisconsin tax return comprise a section headed "Tax Computation." (Stip Ex 2 at 4-5.) On line 39 of that return, Plaintiffs reported $79,669 in "[t]ax" according to a tax table (hereafter, Plaintiffs' "gross tax"). (*Id.* at 4.) Plaintiffs then claimed a $491 itemized deduction credit on line 42 and $78,055 in nonrefundable "[o]ther credits" on line 55. (*Id.* at 4-5, 9–10.) The bulk of those other credits was a single $77,705 Wisconsin-specific "manufacturing and agricultural credit" passed through from NGB. (Stip Facts at 3, ¶ 6.) After subtracting all credits from their gross tax, Plaintiffs reported a Wisconsin "net tax" of $1,123 on line 58 and carried that figure forward to line 63. (*Id*. at 5.) The amount shown on line 63 was subsequently subtracted from the total of Plaintiffs' payments and refundable credits to determine their Wisconsin overpayment on line 76. (*Id.* at 6.)

On their 2018 Oregon tax return, Plaintiffs claimed a credit of $63,601, which is the share of their $79,669 Wisconsin gross tax proportional to the share of the year they lived in Oregon. (Stip Facts at 4, ¶¶ 8-9.) Defendant reduced that credit to $1,123 after audit. (*Id.*, ¶ 10.) After a conference, Defendant issued the Notice of Assessment from which Plaintiffs appealed to this court. (*Id.*, ¶¶ 11, 13.)

## II. ANALYSIS

The primary issue in this case is whether under ORS 316.082(1) the credit for taxes imposed by another state is determined from the gross tax drawn from the other state's tax tables or from the net tax after application of nonrefundable credits.[1] In addition to the statutory interpretation question, Plaintiffs argue that determining the credit from net tax would violate the Due Process Clause and the Commerce Clause of the United States Constitution. Plaintiffs ask the court to reverse Defendant's adjustments and the consequent penalties.

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

A.    *Meaning of "Imposed" Within ORS 316.082(1)*

Chapter 316 of the Oregon Revised Statutes codifies the Personal Income Tax Act of 1969. ORS 316.002. ORS 316.082(1) allows a credit for income tax "imposed" by other states on individuals: "A resident individual shall be allowed a credit against the tax otherwise due under this chapter for the amount of any income tax imposed on the individual * * * for the tax year by another state on income derived from sources therein and that is also subject to tax under this chapter." By regulation, Defendant limits the credit for tax imposed by another state to "[t]he tax actually paid to the other state." OAR 150-316-0084(3)(b).[2]

Here, Defendant has denied most of Plaintiffs' claimed credit for tax imposed by Wisconsin on the ground that Plaintiffs actually paid only the "net tax" shown on line 58 of their Wisconsin return, not the gross tax from the tax table that is shown on line 39. Defending its administrative rule, Defendant contends that only the net tax was "imposed" on Plaintiffs because "imposed" is equivalent to "paid." Plaintiffs disagree, charging that Defendant errs in interpreting "imposed" as equivalent to "paid."

The court observes that the commonly understood meaning of *imposed* is broader than "paid." After all, penalties are "imposed" by Defendant for failure to timely pay tax. *See* ORS 314.400(8) (coordinating multiple penalties "imposed" under that section).

The word *impose* entered the English language (by means of Old French) from the Latin word *imponere*. 1 *The New Shorter Oxford English Dictionary*, 1324 (Lesley Brown ed., 4th ed 1993), *s.v.* "impose." The root meaning of *imponere* is "to place, put, set, *or* lay into, upon or in a place," and, among other senses, the word was used by Cicero and Caesar to signify laying a burden or a tax upon another. Lewis and Short, *A Latin Dictionary* 906 (Clarendon Press 1993

_____

[2] Oregon Administrative Rule (OAR)

ed), *s.v.* "impono." A sense of burdening or constraining another is retained in current American English:

> "[3] **b** (1) **:** to make, frame, or apply (as a charge, tax, obligation, rule, penalty) as compulsory, obligatory, or enforcible <~ a duty on a city official> <the obligations *imposed* by international law –*Encyc. Americana*> **:** LEVY <~ a tax on all unmarried men> **:** INFLICT <~ punishment upon a traitor> <flying ~s a heavy nervous strain on the individual –H.G. Armstrong> **:** force one to submit to or come into accord with – usu. used with *on* or *upon* <moved the newspapers to ~ a uniformity upon the written language –Oscar Handlin> <~ their dictates on the smaller nations –Vera M. Dean> <~ restraints upon the children>"

*Webster's Third New Int'l Dictionary* 1136 (unabridged ed 2002), *s.v.* "impose." The *Websters* definition specifically references taxes in providing that the burden be made "compulsory, obligatory, or enforcible." *Id.*

Defendant finds dictionary definitions to support its reading of *imposed* as "paid" in the entries for *collect* and *exact*, which are words found in the definition of *levy*, which the above-quoted entry from *Websters* lists as a synonym of *impose*. In following that chain of dictionary entries, Defendant has lost the full sense of *imposed* as it is used in the statutes.

Regarding the statute in question, ORS 316.082, this court has found that a tax paid to another state was "imposed" where, at the time of payment, the taxpayers "were obligated by law" to pay the tax. *LaDeRoute v. Dept. of Rev.*, TC 2508, 1987 Or Tax LEXIS 60 at *6 (Apr 21, 1987). That usage corresponds with both the root meaning of *imposed* as burdening another and the dictionary definition of making a tax or penalty obligatory. Thus, under ORS 316.082(1), a tax is "imposed on the individual" when a jurisdiction burdens the individual with an obligation to pay a specific amount.

The time when an individual becomes obliged to pay a specific amount of tax depends on the kind of tax. Real property taxes are imposed by the county assessor, and thereafter remain as liens on the property until paid. ORS 311.405(1)(a), (2). However, the income tax differs from

property taxes in that income taxes are self-assessed. *See* ORS 316.362; *Rau v. Dept. of Rev.*, 13 OTR 190, 192 (1994) (relating taxpayer's obligation "to self-assess the individual's personal income tax liability and to file a return with the department"). Tardy filings and errors may prompt adjustments to an income tax return, but in the normal course the amount of tax owing is calculated on a return. Thus, income tax is typically imposed on a person when that person's return is filed.

Because income tax is generally due when the return is filed, a rule interpreting "imposed" to mean "paid" may generally yield similar results. However, the concepts are distinct. The imposition obliges; the payment fulfills that obligation.

The income tax statutes commonly employ the term *imposed* in a more general sense—a sense not specific to one individual. Most prominently, the personal income tax is established with the following words: "A tax is *imposed* for each taxable year on the entire taxable income of every resident of this state." ORS 316.037(1)(a) (emphasis added). The word *imposed* cannot there be a synonym for actual payment. The next sentence continues in the future tense: "The amount of the tax *shall be* determined in accordance with the following table[.]" *Id.* (Emphasis added.) Thus, the general obligation "imposed" by ORS 316.037(1)(a) requires application to individual residents—the amount (if any) owed by any one resident remains to be determined.

In contrast, the credit under ORS 316.082(1) is allowed for "the amount of any income tax imposed on the individual." The reference is to a tax already imposed in a specific amount on an specific person. An individual's obligation to pay a dollar amount of tax is defined when that individual files a return.

In the case of Plaintiffs' 2018 Wisconsin return, the amount of tax imposed on Plaintiffs was the net tax shown on lines 58 and 63, not the gross tax on line 39. Plaintiffs subtracted the

net tax from their withheld income tax to determine their overpayment; if the net tax had exceeded their payments, Plaintiffs would have had to pay the difference. The full amount of the gross tax was reduced by nonrefundable credits before being offset against payments and refundable credits. The gross tax was therefore an intermediary step in the calculation of the tax imposed on Plaintiffs; Wisconsin never obliged Plaintiffs to pay that amount. The court finds that Plaintiffs' Wisconsin tax was imposed in the amount of the net tax they determined: $1,123.

Plaintiffs argue that our Supreme Court's opinion in *Con-Way Inc. v. Department of Revenue*, 353 Or 616, 302 P3d 804 (2013), suggests that tax credits are payments of taxes already imposed, but such a conclusion goes beyond the holding or reasoning of that case. In *Con-Way*, the court held that a taxpayer satisfied its obligation to pay Oregon's corporate minimum tax by claiming Oregon's refundable Business Energy Tax Credit (BETC) on its return. *Con-Way*, 353 Or at 631. *Con-Way* does not address when a tax is imposed or what it means for a tax to be imposed because those questions were not at issue. However, the court's finding that a BETC could be applied as a payment was partly due to the fact that the BETC was a refundable credit, unlike the Wisconsin credits at issue here. *See id*. at 622-23. The fact that refundable and nonrefundable credits function in conceptually different ways tends to support that *Con-Way* is inapposite here.[3]

B.    *Federal Constitutional Issues*

Plaintiffs challenge the constitutionality of Oregon taxing their income without allowing credit for the Wisconsin credits, alleging violations of the Due Process Clause and the Commerce Clause of the United States Constitution. In so doing, Plaintiffs treat the tax at issue

---

[3] Although the above analysis shows that a tax "imposed" is not the same as a tax "paid," the court does not reach the question of whether OAR 150-316-0084(3)(b) is too restrictive in limiting the credit under ORS 316.082(1) to tax "actually paid" because Defendant nevertheless prevails.

here as a tax on NGB, the Wisconsin S corporation. Plaintiffs' constitutional arguments are inapt because the tax at issue is on Oregon residents, not an out-of-state entity.

1.      *Due Process Clause*

State action must comport with Section 1 of the Fourteenth Amendment to the United States Constitution, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" Due process of law is possible only where the person affected by the state action is within that state's jurisdiction. *See Pennoyer v. Neff*, 95 US 714, 733, 24 L Ed 565 (1878) (discussing due process with respect to court judgments). It is a well-established principle of public law that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory." *Id*. at 722.

Over the years since *Pennoyer* was decided, the United States Supreme Court has refined and reformulated tests for determining whether a state has jurisdiction over out-of-state corporations. *See Figueroa v. BNSF Ry. Co.*, 361 Or 142, 148-52, 390 P3d 1019 (2017) (relating history). The question is complicated by a corporation's status as a legal fiction, which lacks a physical body: "unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it." *International Shoe Co. v. Washington*, 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945).

In such cases, the Court now "applies a two-step analysis to decide if a state tax abides by the Due Process Clause." *North Carolina Dept. of Rev. v. The Kimberley Rice Kaestner 1992 Family Trust*, 588 US 262, 269, 139 S Ct 2213, 204 L Ed 2d 621 (2019). The first step looks at whether the out-of-state corporation has " 'certain minimum contacts' with the State such that the tax 'does not offend "traditional notions of fair play and substantial justice." ' " *Id.* (Quoting

*International Shoe Co.*, 326 US at 316). The second step is relevant where property within a state's jurisdiction derives value as part of a system extending beyond that state's jurisdiction (*e.g.*, railroad ties and telegraph poles); in that case, the tax formula "must bear a rational relationship, both on its face and in its application, to property values connected with the taxing State." *Norfolk & Western Ry. Co. v. Missouri State Tax Comm'n.*, 390 US 317, 325, 88 S Ct 995, 19 L Ed 2d 1201 (1968), *cited in Moorman Mfg. Co. v. Bair*, 437 US 267, 273, 98 S Ct 2340, 57 L Ed 2d 197 (1978), *cited in Quill Corp. v. North Dakota*, 504 US 298, 306, 112 S Ct 1904, 119 L Ed 2d 91 (1992), *cited in Kaestner*, 588 US at 269.

None of the cases cited above question a state's jurisdiction to tax individual residents. Recent Due Process Clause jurisprudence in this area has developed to assist in determining when a corporation is present within a geographically defined jurisdiction; that is a problem that does not occur with individual taxpayers. *See International Shoe Co.*, 326 US at 316. "The state's taxing authority extends to all of the income earned by its residents, including income earned outside the state." *Keller v. Dept. of Rev.*, 319 Or 73, 78, 872 P2d 414 (1994) (rejecting taxpayers' argument that taxing income earned out of state was unconstitutional).

Plaintiffs assert that the tax at issue here is actually on "NGB through Plaintiffs" and the income at issue was "unrealized" because it was not distributed to Plaintiffs. The court does not understand Plaintiffs to be suggesting that no income was realized by NGB. Rather, Plaintiffs' argument seems to be that Oregon's personal income tax, as applied here, is actually a tax on the corporate income of NGB.

Plaintiffs' assertion is inconsistent with the tax treatment of S corporations under the law, as well as with Plaintiffs' own treatment of the income in question on their return. NGB is a Wisconsin S corporation, and as such receives pass-through tax treatment. *See* IRC § 1366. The

income of a shareholder in an S corporation includes a pro rata share of the S corporation's income. IRC § 1366(a)(1). Plaintiffs reported the income at issue on their personal tax return. The tax at issue is imposed on Plaintiffs, not on NGB.

For that reason, Plaintiffs have misplaced their reliance on *Kaestner* and on *Estate of Evans v. Department of Revenue*, 368 Or 430, 492 P3d 47 (2021). In *Kaestner*, the Court held that an out-of-state trust did not acquire minimum contacts with a state through a beneficiary's residency where no distributions were made to the beneficiary. 588 US at 276. But the tax in *Kaestner* was on the trust's income, not on the resident beneficiary's income. Likewise, in *Estate of Evans* the question was whether an out-of-state trust's assets were taxable as part of a resident decedent's estate. 368 Or at 432. In both *Kaestner* and *Estate of Evans*, a minimum contacts test was applied because the state's taxing power was stretching to an out-of-state entity. That is not the case here.

Oregon has authority to tax its own residents based on their income, even their out-of-state income. *Keller*, 319 Or at 78. That authority is a corollary of Oregon's "exclusive jurisdiction and sovereignty over persons and property within its territory." *See Pennoyer*, 95 US at 723. Nothing in the more recent Due Process Clause cases invoked by Plaintiffs calls that authority into question.

2.    *Commerce Clause*

The Commerce Clause is found in Article I, section 8 of the United States Constitution, and grants Congress power to "regulate Commerce * * * among the several States." The United States Supreme Court has "consistently held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when

/ / /

Congress has failed to legislate on the subject." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 US 175, 179, 115 S Ct 1331, 131 L Ed 2d 261 (1995).

The currently accepted framework for applying the dormant Commerce Clause to state taxation evaluates states' exertions of their taxing authority under a four-prong test: "The Court will sustain a tax so long as it (1) applies to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services the State provides." *South Dakota v. Wayfair, Inc.*, 585 US 162, 174, 138 S Ct 2080, 201 L Ed 2d 403 (2018) (citing *Complete Auto Transit, Inc. v. Brady*, 430 US 274, 279, 97 S Ct 1076, 51 L Ed 2d 326 (1977)).

Plaintiffs argue that the tax at issue here violates all four prongs of the *Complete Auto* test: "Oregon has no nexus with NGB and provides no services fairly related to NGB's business activity," the tax "is not fairly apportioned," and its result is "discriminatory taxation of out-of-state activity." (Ptfs' Mot Summ J at 19.) Yet Plaintiffs' formulation of their Commerce Clause argument reveals the same confusion as was present in their Due Process Clause argument: who is being taxed. As discussed above, Plaintiffs are part-year Oregon residents being taxed on their personal income, and NGB is not being taxed by Oregon.

Once it is recognized that the tax at issue is a personal income tax on Oregon residents, it is clear that the tax satisfies the first and fourth prongs of the *Complete Auto* test. Plaintiffs' "substantial nexus" was their actual, physical nexus—their residency in Oregon. As residents, Plaintiffs were "plainly accorded the protection and services of the taxing State." *See National Bellas Hess, Inc. v. Dept. of Rev.*, 386 US 753, 757, 87 S Ct 1389, 18 L Ed 2d 505 (1967) (relating prior holdings concerning companies with in-state agents and retail stores).

/ / /

Plaintiffs' argument that the tax violates the second and third *Complete Auto* prongs rests on the contention that their income has already been taxed by Wisconsin, and that the tax has largely been paid via Wisconsin tax credits. Believing they have been taxed twice on the same income, Plaintiffs assert that Oregon's tax is unfairly apportioned and discriminatory. However, the above discussion of the statutory term *imposed* shows that Plaintiffs have not been taxed by Wisconsin on the income in question. The tax imposed by Wisconsin was on Plaintiffs' net income after accounting for nonrefundable credits.

The situation here is therefore quite different from that of Maryland taxpayers in *Comptroller of the Treasury of Maryland v. Wynne*, cited by Plaintiffs in their brief. 575 US 542, 135 S Ct 1787, 191 L Ed 2d 813 (2015). In *Wynne*, Maryland taxpayers were not allowed a deduction for taxes paid to another state on one of the state's two income taxes. 575 US at 546-47. As a result, Maryland residents' out-of-state income was taxed twice, operating as a tariff that discriminated against earning money out of state. *Id*. at 565. In contrast, by claiming the Wisconsin tax credits on their Wisconsin return, Plaintiffs reduced the amount of Wisconsin tax imposed on them. Thus, a portion of Plaintiffs' Wisconsin income was not taxed by Wisconsin. There is no double taxation involved in Oregon taxing Plaintiffs for that income.

## III. CONCLUSION

The credit under ORS 316.082(1) is equal to the net tax shown on Plaintiffs' Wisconsin return, and Oregon's application of that statute to Plaintiffs is permissible under the Due Process Clause and the Commerce Clause. Because Plaintiffs substantially understated their income by claiming too large a credit, Defendant did not err in assessing penalties. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Defendant's Cross-Motion for Summary Judgment be granted and Plaintiffs' Motion for Summary Judgment for tax year 2018 be denied.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on May 5, 2025.*